## SNEAD v. BONNOIL.

(Supreme Court, Appellate Division, First Department.  March 16, 1900.)

1. ARREST—JUSTIFICATION.

An arrest, without a warrant, for a felony, cannot be justified by the fact that the person arrested had at the time in his possession a concealed weapon, and was subsequently fined for such misdemeanor; Code Cr. Proc. § 180, requiring the officer to inform the arrested person of the cause of the arrest, except when the person arrested is in the actual commission of a crime, and such exception relating to an open and visible crime.

2. FALSE IMPRISONMENT.

Where an arrest, without a warrant, for a felony, was not justified by the circumstances, the persons making the arrest are liable for false imprisonment, even if the arrest was justified because of the undisclosed fact that the person arrested was carrying a concealed weapon, and was therefore guilty of a misdemeanor, failure of the officers to take him before a magistrate without unnecessary delay, and charge him with the offense, making them trespassers ab initio; and the person having been arrested in the evening, and locked up for the night, taken before the magistrate the next morning, and charged only with being a "suspicious person," and remanded to the officers' custody at their request for another day, that they might make inquiries about him and the property which they suspected he had stolen, and they having on the following morning for the first time charged him in court with carrying a concealed weapon.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from trial term.

Action by Harry V. Snead against Maurice Bonnoil. From a judgment on a verdict for plaintiff, defendant appeals.  Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

William B. Crowell, for appellant.
Robert L. Harrison, for respondent.

BARRETT, J.  The action is for a false imprisonment.  The defendant and one Cottrell, both police officers, arrested the plaintiff without a warrant.  The circumstances, as detailed by the defendant in his testimony, were probably sufficient to justify the arrest. They showed ground for the suspicion, and possibly reasonable ground for the belief, that the plaintiff had not come honestly by the silverware and jewelry which he then had in a small satchel, and which he had just attempted to pawn.  There was, however, a conflict of testimony with regard to the attendant circumstances. The plaintiff gave an entirely different version of them from that given by the defendant.  According to the plaintiff's version, there certainly was not enough to justify any fair-minded man in the belief that he had committed a felony, or, at the very least, the question on that head was for the jury.  The plaintiff testified, in substance:  That he had rooms at No. 98 Fifth avenue, where he had been living for seven or eight months; that on the 8th of November, 1893, he put some silverware and jewelry (which was lawfully in his possession, and which he was authorized to dispose of) into a small satchel, and went to a pawnshop with the intention of pawning it.  The pawnbroker examined the property, but would not ad-

vance the sum which the plaintiff required. He thereupon put the property back into the satchel, and started for home. It was then about 6 o'clock in the afternoon. He had gone but a short distance when the defendant and Cottrell came up behind him, and touched him on the shoulder, saying, "What have you got in that bag?" The plaintiff turned, and saw these two men, who were entire strangers to him, and who exhibited no insignia of authority. He replied at once, "None of your business; take your hand off my shoulder." The defendant then said, "We are officers, and you are under arrest." The plaintiff inquired, "What for?" and the defendant rejoined, "Well, we want to know what you have got in that bag." The plaintiff asked them to show their authority for arresting him, and offered to prove in a very few minutes his ownership of the property. He begged them to go with him to his residence, and said that the janitor there would prove to them who he was. They refused, in a most brutal manner, calling him a vile name, swearing at him, and even beating him. They then actually handcuffed him, and took him in that condition through the streets to police headquarters. The verdict conclusively shows that the jury believed this testimony, and decided that the circumstances which the plaintiff thus narrated failed to furnish reasonable ground for the belief that he had come dishonestly by the property in the bag, and that these circumstances were consequently insufficient to justify the arrest. The question on that head was fairly submitted to the jury, and the result is that the arrest was a trespass, and, we may add, an aggravated one.

It is, however, sought to justify the arrest upon the ground that, although there may have been no reasonable cause to believe that the plaintiff was guilty of a felony, yet he was in fact guilty of the misdemeanor of carrying a concealed weapon, namely, a loaded pistol. The contention is that, although the pistol was actually concealed when the arrest for the felony was made, yet the misdemeanor of carrying it was then and there committed in the presence, as distinguished from the sight, of the officers. It is true that the plaintiff then had upon his person a loaded pistol, and the defendant says that Cottrell suspected as much. The pistol was not drawn or exposed to view, but Cottrell, so the defendant testified, called out, "Look out, Maurice! he has got a gun in his pocket." As we have already seen, the jury disbelieved the defendant's testimony. But, further, the learned trial justice, at the request of the defendant's counsel, instructed the jury that, if the officers arrested the plaintiff for the offense of carrying a concealed weapon, the defendant was not liable. Thus the jury by their verdict found that the arrest was solely for the felony. It is a little difficult to understand, under these circumstances, what bearing the fact that the plaintiff then had in his possession a concealed weapon, and was subsequently fined for that offense, can have upon the question whether this arrest for the felony was legal or illegal. He was not arrested for carrying the pistol. So the jury has necessarily found. He was arrested solely for the felony. Subsequently, when it was found that the defendant's position with re-

gard to the felony was untenable, the plaintiff was detained upon the supplemental charge of carrying a concealed weapon. The justification pleaded for the arrest is that the defendant and his fellow officer had reasonable cause to suspect that the plaintiff was committing a felony. There is not a word in the answer justifying the original arrest upon the ground that a misdemeanor was being committed in their presence. The only allusion to the pistol to be found in the answer is the statement that, after the plaintiff had been arrested and taken to the police headquarters, the defendant found a pistol in his hip pocket. The justification cannot be separated from the cause assigned for the arrest, and applied to an unassigned cause. The right to arrest without a warrant depends upon the relation of the attendant circumstances to the specific accusation. There can be no general right to arrest a citizen for an undisclosed offense. The statute requires the officer to inform the arrested person of his authority and the cause of the arrest, except when the person arrested is in the actual commission of a crime. Code Cr. Proc. § 180. The latter exception relates to an open and visible crime, or to one brought to light at the time of the arrest. Where there is no overt act of criminality or visible offense committed in the immediate presence of the officer, he must inform the arrested person of the cause of the arrest. He cannot arrest a man for one cause, and when that is exploded justify for another. Such a doctrine would be an incentive to the loosest practices on the part of police officers, and a dangerous extension of their sufficiently great powers. They cannot be too firmly told that there is no such lawful thing as an arrest without an apparent or disclosed cause, to be justified thereafter by whatever may turn up. If the arrest here had been upon a void warrant, the defendant's position with regard to the misdemeanor would have been substantially the same as it now is. He could with equal propriety have said: "I arrested the plaintiff on the warrant for the felony. I did not arrest him without a warrant for the misdemeanor committed in my presence. Had I known, however, that he was carrying a pistol, I might have arrested him therefor." The plain answer would be: "But you did not do it. You cannot arrest a man merely because, if all were known, he would be arrestable. You must arrest him for some specified cause, and you must justify for that cause." This question was presented in Murphy v. Kron, 8 N. Y. St. Rep. 230. There the arrest was under a warrant, but it was unlawfully executed in the nighttime. It was held that there was a false imprisonment the moment the defendants took the plaintiff into custody under the warrant. When the officers demanded admittance to the plaintiff's house, he fired off a revolver. They defended their action upon the ground that, as the revolver was then used in their presence, under circumstances which constituted a crime, they were justified in arresting the plaintiff. But the court—Justice Haight writing—held that they were bound by the arrest under the warrant, and could not offer another cause, sufficient to warrant the plaintiff's apprehension, in justification of their action.

There is still another reason why the defendant should be held in this action: Even if the arrest was justified because, as matter of undisclosed fact, the plaintiff was carrying a concealed weapon, there was a distinct breach of the defendant's subsequent duty. That duty was to take the plaintiff before a magistrate without unnecessary delay, and charge him with the offense. His failure to do this made him a trespasser ab initio, and liable for false imprisonment. Pastor v. Regan, 9 Misc. Rep. 547, 30 N. Y. Supp. 657. In the latter case Justice Rumsey said:

"The rule laid down in the Six Carpenters' Case, 8 Coke, 146, that if a man abuse an authority given him by law he becomes a trespasser ab initio, has never been questioned. Indeed, the rule is not questioned in this motion, but the suggestion is made by the counsel for the defendant that this rule does not apply to the case of an arrest, but only to cases of unlawful or other seizures of property. That does not seem to be the case here. In the case of Tubbs v. Tukey, 3 Cush. 438, the precise question presented here was presented to the court, and it was held that the rule laid down in the Six Carpenters' Case applied to cases in which the arrest was legal, but the subsequent detention was illegal and unreasonable."

The case of Brock v. Stimson, 108 Mass. 520, was also cited,—a case which fully supports the rule there laid down.

Let us now look at the facts of the present case, with relation to the question of unlawful detention. The plaintiff was arrested upon the evening of the 8th of November. He was then locked up at police headquarters for the night. Upon the morning of the 9th the defendant and Cottrell took him before a magistrate, and there charged him with being a "suspicious person." They then made no charge of carrying a concealed weapon. On the contrary, they asked the magistrate to remand the plaintiff to their custody for another day to enable them to make inquiries about him, and about the property which they suspected he had stolen. They succeeded in inducing the magistrate to do this, and accordingly the plaintiff was confined for another day and night at police headquarters, while they prosecuted their inquiries. He was again taken before the magistrate on the morning of the 10th. Then the defendant and Cottrell, having concluded that they could not sustain their original accusation, for the first time—we mean for the first time in any court or before any magistrate—charged the plaintiff with the misdemeanor. He was thus detained from the morning of the 9th until the morning of the 10th, unnecessarily and illegally, and deprived of the right to give bail, so far as the charge of carrying a concealed weapon was concerned. Thus the officers utilized the felony charge to detain the plaintiff for at least 24 hours beyond the time when he was entitled to his discharge upon bail upon the misdemeanor charge. And the latter charge, though entered alternatively on the blotter at police headquarters, was only made to the magistrate as a last resort, when it was found that the real charge upon which he had been detained could no longer be adhered to. Upon principle and authority, this conduct of the defendant made him liable as a trespasser ab initio. Beyond peradventure he was liable for every hour that he detained the plaintiff after he and his associate secured the remand from the magistrate for a reason which could not have

availed them had they then charged the plaintiff with the misdemeanor.

Upon both of the grounds discussed, we think the judgment was right, and should be affirmed, with costs.

RUMSEY and McLAUGHLIN, JJ., concur.

INGRAHAM, J. (dissenting). I am unable to concur in the affirmance of this judgment. The action is for false imprisonment, the charge against the defendants being that they (the defendants) "maliciously, and with intent to injure the plaintiff, by force compelled plaintiff to go with them to the central police office or headquarters, situate in said city of New York, and there imprisoned this plaintiff, and then and there detained him, restrained of his liberty for the space of forty-eight hours, or thereabouts, without reasonable cause, and without any right or authority so to do." The defendants, who were police officers of the city of New York, denied this allegation of the complaint, and alleged that they saw the plaintiff enter a pawnshop upon Sixth avenue with a large bag in his possession, which contained a large quantity of silverware; that they asked the plaintiff to explain where he received the silverware and bag, which the plaintiff refused to do; that they took the plaintiff to police headquarters to make a proper and satisfactory explanation to the defendants' superior officers; that the defendants then found concealed in the plaintiff's hip pocket a six-barrel revolver, and found in the satchel which the plaintiff carried 83 pieces of silverware; that on the morning of the 9th day of November, 1893, the day following, the plaintiff was arraigned before a police justice, who remanded him for examination; that on the morning of the 10th of November, 1893, the plaintiff was taken before the police justice, and bailed in the sum of $300, upon the charge that the plaintiff was carrying a concealed weapon; that such proceedings were thereafter had that at the court of special sessions, on the 28th day of December, 1893, the plaintiff was found guilty as charged, and fined $10; and that the defendants, having reasonable cause to suspect that the plaintiff was committing a felony, arrested and brought him before Police Inspector McLaughlin at headquarters, there to be dealt with according to law. From the evidence of the plaintiff, it appeared that he was arrested on the night of the 9th of November; that when the defendants took the plaintiff to police headquarters he was taken before Police Inspector McLaughlin, and was subsequently searched by a police sergeant in charge, and a weapon found upon him. It also appeared from the blotter at police headquarters that the plaintiff was arrested for a violation of a corporation ordinance, and that he was held, and bailed on November 10th in the sum of $300. There was a note to this entry on the blotter which stated that the plaintiff was arrested on "suspicion of having stolen a valise containing a quantity of silver-plated ware, which he was trying to dispose of when arrested. The officers were unable to find the owner of the plate, and charged him with violation of corporation ordinance, he having a loaded revolver

in his possession when arrested." Upon the plaintiff's own testi-
mony, he was guilty of a misdemeanor when arrested. The pistol
was found in his pocket, and there is a statement in the testimony
of the defendants, which is not contradicted, that when the plaintiff
was arrested he put his hand to his hip pocket, and that one of the
officers then said to the other that the plaintiff had in his posses-
sion a firearm. At the end of the plaintiff's case counsel for the
defendants moved to dismiss the complaint, on the ground that no
facts had been shown sufficient to constitute a cause of action. This
motion was renewed at the end of the case, and was denied, and
the defendants excepted. I think this motion should have been
granted. As before stated, the action is for false imprisonment.
The very foundation of an action for false imprisonment is an illegal
detention. 12 Am. & Eng. Enc. Law (2d Ed.) 726. That "if the de-
tention, therefore, is not positively illegal, no action for false im-
prisonment can be maintained, no matter at whose instigation the
act was done, or by what motive actuated"; and "an arrest made
without warrant by an officer of the law is not a false imprison-
ment, * * * if, in the presence of the officer arresting, a mis-
demeanor had been committed by the person taken into custody."
Id. 740. By section 277 of the consolidation act (chapter 410, Laws
1882), it is provided that:

"The several members of the police force shall have power and authority to
immediately arrest, without warrant, and to take into custody any person who
shall commit, or threaten, or attempt to commit in the presence of such mem-
ber, or within his view, any breach of the peace or offense prohibited by act
of the legislature, or by any ordinance of the city."

These defendants, being thus authorized to arrest the plaintiff
without warrant, if, in their presence, he violated an ordinance
of the city of New York, or committed a misdemeanor, arrested
the plaintiff when violating such an ordinance, and when guilty
of a misdemeanor, in having in his possession a concealed weapon.
The plaintiff when arrested was guilty of a crime, and, by express-
provision of the consolidation act, the defendants were authorized
to arrest him. Yet it was held in the court below that the arrest
and detention were illegal; and this, in the face of the fact that
the plaintiff was held by the magistrate before whom he was taken,.
and was subsequently tried by a court of competent jurisdiction
for the offense, and convicted, which conviction, upon appeal, was
affirmed. This is put upon the ground that the defendants arrested
the plaintiff for another offense, which was unjustified. In the
view that I take of this question, it is unnecessary to consider
whether the defendants were justified in arresting the plaintiff
under the circumstances detailed by the plaintiff in his testimony.
The rule is well settled that an arrest by an officer of the law is
not a false imprisonment if the officer arresting has reasonable
ground to believe that a felony has been committed, and that the
person arrested was the guilty party. Am. & Eng. Enc. Law (2d
Ed.) 740. I am not prepared to say that where a police officer
sees a party with a bag full of what appears to be silverware going
into a pawnshop after dark, and trying unsuccessfully to pawn the-

silverware, he has not the right to take the person into custody upon the refusal of the person to explain how he came in possession of the articles which he had endeavored to pawn. The circumstances were certainly suspicious. The welfare of the community and the safety of its citizens depend upon the active vigilance of the police in watching for lawbreakers, and I cannot but think that a police officer is justified in calling upon a person acting under the circumstances detailed to explain his possession of the articles which he had sought to pawn, and, in the absence of a sufficient explanation, to take the person into custody pending an examination; but in this case it is not necessary that we should determine that question, because here the defendant, when arrested, was actually engaged in violating a corporation ordinance, and was committing a crime by having in his possession this concealed weapon. It seems to me that it was entirely immaterial upon what ground the plaintiff was arrested, or with what offense he was charged by the officer when arrested. When he was arrested he was committing a crime for which he was duly convicted by a court of competent jurisdiction, and punished. That crime was committed in the presence of an officer, and, even if the officer had no knowledge of it at the time of the arrest, the arrest cannot be illegal if, when arrested, the person arrested was actually committing a crime for which he was afterwards held and convicted. There is nothing in the statute or the rule of law that requires that the officer shall see the offender commit the crime. It is enough if committed in his presence. That this plaintiff was held at police headquarters for the crime of carrying this concealed weapon appears from his own evidence and from the entry in the police blotter, but I do not see how this appellant could be held chargeable for the detention of the plaintiff at police headquarters. The defendants arrested the plaintiff, took him to police headquarters, and delivered him over to their superior officer, who caused him to be searched, and upon such examination he was found to have committed a crime. The inspector ordered him to be detained, and from the record upon the blotter it would appear that he was held for this offense, but any claim that the arrest was illegal is answered by the fact that he was shown to have been committing a crime when arrested. Of course, when an officer attempts to arrest a person without a warrant, the burden is upon him to show that at the time of the arrest the person was actually engaged in the commission of the crime, but when that fact appeared, whether the officer had at the time of the arrest satisfactory evidence of it or not, the act of the officer in making the arrest is not illegal. The case of Murphy v. Kron, 8 N. Y. St. Rep. 230, is not in point. In that case the defendants were police officers, and attempted to arrest the plaintiff on a warrant for stealing a dog of the value of $10. The arrest was at night, when no direction had been made for the execution of the warrant at night. It appeared that after the defendant had rapped at the outer door of the house some conversation took place between the plaintiff and the defendants, and that the defendants demanded admit-

tance, stating that they were officers of the law, and thereupon the plaintiff fired off a revolver in the house. The defendants asked the court to charge that, if the plaintiff aimed or discharged the pistol at or towards any human being, that constituted a crime, and for that the defendants were justified in arresting the plaintiff. This request was refused, and an exception taken; but in that case no charge was made by the officers before the magistrate, or at any other time, that the plaintiff had committed a crime in discharging the revolver, and the decision of the court was expressly put upon the ground that after they had taken the plaintiff to the station house the warrant was returned indorsed thereon that the plaintiff had been arrested "by virtue of the within warrant," and that no complaint was made against the plaintiff upon any other crime. Upon those facts, it was held that the request was properly refused. No authority was cited by the court, and that case cannot be considered as an authority for holding that the arrest was illegal, where the person arrested was actually committing a crime when arrested, and a charge was subsequently made against him for the crime, and he was held and convicted on such charge. It has been held that it is not a false imprisonment where a person is convicted before a trial justice on two distinct offenses, and is committed to the house of correction under two warrants, one legal and the other illegal, and held in custody under both warrants during the whole time of his imprisonment (Doherty v. Munson, 127 Mass. 495); and it has also been held, in a case of detention for nonpayment of taxes partly illegal, that it is not to be presumed that the plaintiff was detained until the unlawful excess was paid. Being rightfully held for part, the detention was justifiable. Meserve v. Folsom, 62 Vt. 504, 20 Atl. 926.

I think that this plaintiff was properly arrested for the commission of the offense of carrying concealed weapons, that that arrest was not illegal, and that his detention, under the circumstances, was not illegal, and that the complaint should have been dismissed.

VAN BRUNT, P. J., concurs.